OPINION OF THE COURT
Phillip R. Rumsey, J.
St. James Church (St. James) moves for summary judgment in this declaratory judgment action brought against the Board of Education of the Cazenovia Central School District (District).
St. James is a duly established not-for-profit corporation located in Cazenovia, New York. Among other things, it provides released-time religious education to students enrolled in the District pursuant to 8 NYCRR 109.2 (b). The program also covers many nonreligious issues including dating, marriage, sexuality, AIDS, drugs and alcohol.
For approximately 20 years the District transported students enrolled in its Burton Street Elementary School to and from released-time religious classes located at St. James.
In the past two years St. James has leased buses from the District at a negotiated fair rate to transport the Burton Street Elementary School students.
On August 16, 1993, the Board of Education adopted new guidelines for released-time religious education within the District. The Board enacted a policy under which it will no longer provide, rent, or lease transportation for pupils from the public school site to the released-time religious education program site, or from the religious education site to the public school.
The sole reason the District no longer leases its buses to St. *473 James is because it believes it lacks authority to lease buses for an entirely religious undertaking.
Under New York State law the board of education of any school district is authorized to lease its motor vehicles to various entities.
The section of law in controversy in this action is section 1501-b (1) (h) of the Education Law. That section in pertinent part provides
"1. The board of education of any school district is hereby authorized and empowered to rent or lease for such consideration as may be determined by such board, a motor vehicle or vehicles owned by the respective school district during any time when such vehicle or vehicles are not needed for transportation of such children, which are otherwise used for the transportation of the school children of such district to * * * "(h) any not-for-profit organization, community based organization, or educational or employment and training agency which provides education or employment and training services for youths and adults in a rural county, as defined by section seventy-three-c of the transportation law.”
On November 10, 1993, the District sought direction from the State Education Department (SED) as to whether the District was authorized to lease buses to religious organizations for use in transporting children to religious instruction classes. The SED could provide no direction to the District since neither the Commissioner nor the courts had ever addressed the issue, and an advisory opinion (from the SED’s point of view) would therefore be improper.
St. James argues that it is a specified entity under the plain language of Education Law § 1501-b (1) (h) to which the District may, in its discretion, lease buses. Additionally, the District, by failing to apply the Education Law as neutrally written to religious and nonreligious not-for-profit corporations alike, is discriminating against St. James.
In supporting its position on the statute, the District hones in on the language of the statute that permits the leasing of school buses to any not-for-profit corporation which provides, among other things, education or employment for youths or adults in a rural county. The District does not dispute that St. James is a not-for-profit corporation in a rural community. The District contends, however, that the real question is whether the statutory language can be construed to include religious instruction within "educational services” and, if so, *474 whether section 1501-b (1) (h) then conflicts with article XI, § 3 of the NY Constitution (the Blaine Amendment), and the Establishment Clause of the First Amendment of the US Constitution.
The District relies, in part, upon Matter of Fitch (2 Educ Dept Rep 394) in which the SED construed the Blaine Amendment to prohibit school districts from providing transportation to and from released-time religious instruction classes. Although section 1501-b (1) (h) was enacted after Matter of Fitch, the District points out that an amendment to the Education Law does not serve to amend the New York Constitution.
DISCUSSION
The parties in this declaratory judgment action are confronted with an issue for which they have no prior legal or administrative ruling to guide them.
The fact that the District refuses to lease buses to St. James solely because it believes it lacks the statutory authority to do so creates a genuine issue between the parties as to the application of section 1501-b (1) (h).
The interpretation of various sections of the Education Law has been held to be an appropriate subject for a declaratory judgment action. (Board of Educ. v Rickard, 32 AD2d 135.)
Where the declaratory judgment, determining the rights of the parties, will dispose of a genuine controversy and provide a course to guide their future jurai relations, the court will assume jurisdiction, because the granting of such relief is not only useful but necessary. (24B Carmody-Wait 2d, Declaratory Judgments § 147:4.)
The District faces an imbroglio in which its choice of action potentially subjects it to constitutional lawsuits either for aiding religion or discriminating against it. St. James, on the other hand, has been forced to search for other means of safe transportation for its students, which is a difficult task in rural Madison County, and a costly one that may jeopardize St. James’ ability to provide transportation.
The parties have presented a justiciable issue and one which is particularly suitable to the remedy of a declaratory action.
Taking up first the question of whether the subject section of the Education Law permits the District to lease its buses to St. James, the court finds that it does.
Generally, a court may not change the plain language of a statute. (Matter of Branford House v Michetti, 81 NY2d 681.)
*475 In its common usage, "educational” means serving to educate; instructive. (American Heritage Dictionary [2d Coll ed 1982].) It is a sweeping term encompassing every kind of instruction. By its very definition, it would be impossible to exclude some instruction because of its religious content. The fact that the material is taught from a religious perspective does not make it any less educational.
The court finds that the programs to which the students are transported are educational within the statutory definition. The question then becomes whether this provision of the Education Law violates the State and Federal constitutional requirement of separation of church and State.
The New York Constitution prohibits the use of tax dollars to advance religious purposes. (NY Const, art XI, § 3.)
The First Amendment of the US Constitution forbids government from favoring religion over nonreligion and from "exert[ing] its power in the service of any purely religious end.” (Abington School Dist. v Schempp, 374 US 203, 234.)
Under any view of the facts, the leasing of buses to St. James does not advance any religious purpose. It is a straight financial transaction in which not a dollar of taxpayer money is expended. To the contrary, under the agreement the District would receive money for the use of the buses.
In Matter of Fitch (supra) a parent’s request for transportation to and from religious instruction classes for his children was refused as a violation of the New York Constitution. The SED ruled that the school district was without authority to grant such a request because "the Constitution [does not permit] the use of public money or property, directly or indirectly, in aid or maintenance of any school or institution of learning wholly or partly under the control or direction of any religious denomination” (at 395).
Clearly, two crucial elements in the constitutional prohibition are absent here: the free use of public money or property and the aid or maintenance of the religious institution.
Neither taxpayer money nor taxpayer property is being given or provided to St. James. Nor does the mere lease of a bus for transportation by itself aid or advance religion. The lease no more promotes (in the sense of supporting or establishing) religion than it does the programs of any other not-for-profit to which it leases buses, such as senior citizens’ organizations or the youth recreation commission.
The District is not providing a service but selling a service *476 to a not-for-profit corporation for legislatively approved purposes. These distinctions save the lease in question from violating the Constitution.
The Establishment Clause prohibits governmental policies that aid or handicap religion. It does not forbid all interaction of church and State. In Walz v Tax Commn. (397 US 664, 669) the Court in line with a position of "benevolent neutrality” stated that a government need not act as an adversary of religion to avoid establishment prohibitions.
At times, a three-part test set out in Lemon v Kurtzman (403 US 602) has been used to determine whether a program or statute offends the Establishment Clause. That test requires: (1) governmental action to have a secular purpose; (2) its primary effect must neither advance nor impede religion; and (3) it may not require excessive governmental entanglement with religion.
It is unnecessary to invoke the somewhat disfavored* Lemon test even though the facts comport with the test. Rather the court applies the standard used in Widmar v Vincent (454 US 263). There is no realistic danger that the community would think that the District was endorsing religion or any particular creed in the leasing of buses to St. James, and any benefit to religion in this context is incidental and insignificant.
The District need only satisfy the statutory criteria of the Education Law as to the identity of the organization and the services offered: it must be a not-for-profit corporation and the services offered must be educational. The District need not go beyond these requirements and analyze the content of the educational program offered.
In fact, to go beyond the criteria and to refuse to lease buses to St. James solely based on the religious viewpoint of the program offered would constitute discrimination against St. James.
In Lamb’s Chapel v Center Moriches Union Free School Dist. (508 US —, 113 S Ct 2141) the Supreme Court found unconstitutional a school board’s refusal to permit a church access after hours to show a movie stressing family values from a religious point of view. The school board permitted other groups access to discuss family value issues from the nonsectarian point of view. The board’s refusal to permit access be *477 cause of the religious content of the presentation was found to violate the Free Speech Clause of the First Amendment of the US Constitution.
Although Lamb’s Chapel (supra) involved free speech issues, the Court also discussed the First Amendment’s Establishment of Religion Clause and found no violation of that clause. In the decision there are certain parallels to this case. In Lamb’s Chapel access was denied to school property for a presentation on the basis of viewpoint. In the instant case, based upon the viewpoint of the educational courses offered, the school district refuses to lease its buses to St. James. This is not an impartial application of the subject provision of the Education Law.
The District is under a constitutional obligation to apply the statute as neutrally written to religious and nonreligious entities alike.
CONCLUSION
The motion for summary judgment is granted and the plaintiff is entitled to a declaratory judgment declaring that (1) St. James Church is an entity to which the Board of Education of the Cazenovia Central School District is authorized to lease buses pursuant to Education Law § 1501-b (1) (h), and (2) the refusal of the Board of Education of the Cazenovia Central School District to lease buses to St. James Church because of the religious nature of the not-for-profit corporation and/or the religious content of the instruction (to which the buses transport youths) violates the Equal Protection Clause of the Fourteenth Amendment of the US Constitution and article I, § 11 of the NY Constitution.

 See the concurring opinions of Justices Kennedy, Scalia and Thomas in Lamb’s Chapel v Center Moriches Union Free School Dist. (508 US —, 113 S Ct 2141) disdaining to use the Lemon test.